1

1   IN THE UNITED STATES DISTRICT COURT
    FOR THE NORTHERN DISTRICT OF ILLINOIS
2            EASTERN DIVISION

3

4   UNITED STATES OF AMERICA,          )
                                       )
5                  Plaintiff,          )
                                       )
6   -vs-                               )   Case No. 18 CR 450
                                       )
7   DAVID WALSH,                       )   Chicago, Illinois
                                       )   November 9, 2020
8                  Defendant.          )   2:00 p.m.

9      TRANSCRIPT OF VIDEOGRAPHIC PROCEEDINGS - Sentencing
          BEFORE THE HONORABLE GARY FEINERMAN
10

11  APPEARANCES:

12  For the Government:        HON. JOHN R. LAUSCH, JR.
                               UNITED STATES ATTORNEY
13  (via video conference      BY:  MR. CHRISTOPHER K. VEATCH
    call)                      219 South Dearborn Street, Suite 500,
14                             Chicago, Illinois  60604
                               (312)353-5300
15

16  For the Defendant:         LAW OFFICES OF PATRICK E. BOYLE
                               BY:  MR. PATRICK E. BOYLE
17  (via video conference      155 North Michigan Avenue
    call)                      Suite 562
18                             Chicago, Illinois  60601
                               (312) 565-2888
19

20  Also Present:              MR. JASON CHRISTIANSEN, U.S. PROBATION.

21

22  Court Reporter:

23              CHARLES R. ZANDI, CSR, RPR, FCRR
                     Official Court Reporter
                   United States District Court
24         219 South Dearborn Street, Room 2144-G
                     Chicago, Illinois  60604
25              Telephone:  (312) 435-5387
            email:  Charles_zandi@ilnd.uscourts.gov

1    (Proceedings heard in open court:)

2              THE CLERK:  18 CR 450, USA versus Walsh.

3              THE COURT:  Who do we have for the government?

4              MR. BOYLE:  He might have logged off briefly, your

5    Honor, per our conversation.  I'm sorry.  Oh, there he is.

6              THE COURT:  Okay.  Who do we have for the government?

7              MR. VEATCH:  Good afternoon, your Honor.  Christopher

8    Veatch on behalf of the United States.

9              THE COURT:  And defense counsel?

10             MR. BOYLE:  Good afternoon, your Honor.  Patrick

11   Boyle on behalf of Mr. David Walsh, who's joining us via video

12   in custody from the MCC.

13             THE COURT:  Okay.  I see Mr. Walsh there.  And then

14   who do we have from Probation?

15             MR. CHRISTIANSEN:  United States Probation Officer

16   Jason Christiansen.  Good afternoon, Judge.

17             THE COURT:  Good afternoon.

18             So, this is a continued sentencing hearing.  We were

19   together in early October.  I adjourned the hearing, and it

20   was rescheduled a couple of times.  And I think we were --

21   we got together last week; but for some reason, it wasn't

22   Mr. Walsh's fault, Mr. Walsh wasn't appearing, so we

23   rescheduled it for this afternoon.

24             What I'm going to propose that we do is this:  I had

25   just announced the sentence, or at least part of the sentence,

1    the custodial part of the sentence, which was 96 months each
2    on Counts 1 and 4, to be concurrent with one another, and
3    then a consecutive 60-month term on Count 2.  I was about to
4    explain that part of the sentence when Mr. Walsh had some
5    things to say, and then I thought it was best to adjourn the
6    hearing and continue it for another day.

7           I did tell the parties in a minute order that I would
8    be asking them a couple of questions.  I would ask the parties
9    and the Probation Office whether a departure or a variance
10   based on Mr. Walsh's remarks at the hearing is permitted and,
11   if so, warranted.

12          And I did receive a motion to recuse from Mr. Walsh
13   through Mr. Boyle.  The government has not weighed in on that.
14   And Mr. Walsh, through Mr. Boyle, also filed a motion to amend
15   or correct the Presentence Investigation Report.

16          So, what I'd like to do is this:  I'd first like to,
17   with one exception, finish the sentencing that was going to
18   happen, that I had intended to do before Mr. Walsh gave his
19   continued allocution at the last hearing, kind of finish what
20   I was going -- planning on doing; and then move on to ask
21   whether a different sentence is permitted and, if so,
22   warranted; and at that point take up the motion to recuse as
23   well.

24          And the one exception is I would propose that we
25   handle the motion to amend or correct the presentence report

4

1   now rather than later.  If any -- Probation, defense counsel,
2   the government, if any of you have -- would prefer that we
3   proceed in a different way, I'm very happy to hear you out.

4              MR. BOYLE:  Well, your Honor, I understand all of
5   that.  Since we had to adjourn the last sentencing hearing,
6   when we all appeared but Mr. Walsh wasn't present because of
7   the mistake by the MCC, I did have a long conversation with
8   Mr. Walsh.

9              He seems to be suggesting that he would like to
10  withdraw his guilty plea based upon his misapprehension of
11  the nature of the plea, the fact that we kind of raised this
12  issue during the original sentencing when your Honor concluded
13  that the government had shown by a preponderance the attempted
14  bank robbery.  And because of that, you found that it was
15  appropriate for those four additional points to be added to
16  the offense level.

17             Mr. Walsh objected to that immediately; and he
18  explained that it was his understanding of the guilty plea
19  that that -- that the armed robbery was not going to be used
20  in any way against him, not only the fact that it would be --
21  the charge would be dismissed, which it would be under the
22  terms of the plea agreement, but it was his argument and his
23  belief that it should not be used in any way against him, even
24  as a sentencing enhancement.

25             And for that reason, he says he did not understand

1  the plea agreement, and it would be unfair to hold him to
2  that.
3           THE COURT:  Right.  So, you've had this discussion
4  with Mr. Walsh in the last couple of days.
5           MR. BOYLE:  Right.
6           THE COURT:  Is this a motion that you would like to
7  present in writing?
8           MR. BOYLE:  Well, I mean, it's fairly
9  straightforward, Judge.  It would be pursuant to
10  Rule 11(d)(1).  It's --
11    (Video interruption.)
12           THE COURT:  Go ahead.
13           MR. BOYLE:  Well, again, Judge, I think, you know,
14  we're -- he hasn't been sentenced yet.  And again, at the
15  prior sentencing hearing, Mr. Walsh objected to that.  He
16  essentially said -- I don't have the page in front of me, but
17  he essentially said, "That is not my understanding of the
18  plea.  If that attempted robbery is going to be used against
19  me, I want to withdraw that plea, and I can have a jury
20  trial."
21           So, that is essentially his argument, the fact that
22  it was his understanding that the attempted robbery would not
23  be used in any way against him, not only would it be
24  dismissed, but it wouldn't affect his possible Guideline
25  range.

1       And for those reasons, his guilty plea was not made
2   knowingly, and he wants to withdraw it.

3       THE COURT:  Okay.  I'm looking at the government's
4   attorney, and I don't know if you were involved.

5       MR. VEATCH:  Your Honor, I was not; however, I would
6   suggest a couple of things.  If the defendant is attempting to
7   make a motion to have the plea agreement stricken, there's a
8   couple of things that we would need.  I think we would need a
9   clarity in a written motion.  I think we need to get copies of
10  the transcripts to see what was on the record as far as what
11  the defendant was advised during that sentencing and what
12  representations he had made about working with counsel.

13      And ultimately, if this is on the cusp of an
14  ineffective assistance claim to some degree, because I know
15  Mr. Boyle is a very, very good attorney, who no doubt would
16  have talked about these issues with the defendant in
17  negotiating the plea agreement with him; and I don't know if
18  we would need an *ex parte* proceeding for you to voir dire
19  Mr. Boyle on his communications on this point, to make a
20  credibility assessment on the defendant's now new claims in
21  light of you announcing your sentence or your intended
22  sentence.

23      THE COURT:  Yeah.  I'm not -- I appreciate all of
24  those thoughts.  I'm not sure the voir dire with Mr. Boyle
25  would be necessary.  I'm looking at the plea agreement, and

1   on pages 8 to 9, in Section 9(b)(v), it does state that it's

2   the government's position that the offense level would be

3   increased by four levels because of the attempted bank

4   robbery, possessing the firearm in connection with an

5   attempted bank robbery.

6          I have not reviewed the transcript of the plea

7   hearing, but I am as sure as sure could be that I went over

8   this with Mr. Walsh and told him I couldn't make a decision

9   right now on this Guideline issue, and I would hear from both

10  sides and make a decision at the sentencing hearing.  But I

11  can't say that with 100 percent certainty because I haven't

12  looked at the transcript.

13         THE DEFENDANT:  I'd like to respond, sir, if I could.

14  At page --

15         THE COURT:  Go ahead.

16         THE DEFENDANT:  At page 6, I objected, in the

17  sentencing transcript.  I started -- and I objected.

18         THE COURT:  Right.  I understand that, Mr. Walsh,

19  that you objected at the sentencing hearing; and that was

20  contemplated as part of the plea, that the government was

21  going to argue for the four-level enhancement and the

22  defendant was going to argue against it.

23         THE DEFENDANT:  Remember when I suggested -- well,

24  you suggested at the plea agreement that you weren't going

25  to accept my plea unless I pled guilty to the 924(c) as-is,

1  instead of having a replica weapon, which I did have at
2  that time.

3        I could have had something that I could have shown
4  to a jury at that time that would have made a big difference
5  on the 924(c), as far as photographs and the rest of it.
6  And it would be to my advantage, and I would have reasonable
7  doubt on that.

8        In other words, even when -- in 2019, when I went
9  to make that plea, in the court, the open plea, all right,
10 listen, I did state to you that I would take a jury trial on
11 the 924(c).  And if you look now, you're going to see that I
12 said that at that date and time.  I did do that.  I'm not
13 making this up.  It's there.

14       Also on page 6 of the sentencing transcript, I said,
15 "I would like to say something about that.  The agreement,
16 okay, in the plea agreement that it said I was away.  All of
17 the four-level enhancement is not going to apply, which I'm
18 not going to go for.  We can go to a jury trial is what you
19 can do, and I don't care what happens on that issue."

20       On page 7, this is before we started all of this
21 other stuff, I said, "Well, it should have been that way from
22 the very beginning because that's a plea agreement.  That's
23 all I'm saying.  What do I know?  If you want to violate the
24 plea agreement or you want to enhance things, we can go for a
25 jury trial.  How about that?"

1    In other words, I'm saying when you -- when we were
2 there on February 20, you looked over at your computer with
3 the three points, right?  I would have been facing 123 months.
4 And what happened is that I only got two points.  I believe I
5 should have had three.

6    Now, if anybody is fair at all, I would get three
7 points.  It was, what, two days off that Friday.  I think it
8 was a Tuesday or Wednesday or something.  They only had to fly
9 one person in.  I don't think it was that much of a bother.  I
10 think I did it in a timely enough fashion, even though it was
11 down to the line, being fair about it.  And then I should have
12 gotten the three points.

13    That's 123 months tops.  10 years.  That was my
14 understanding of the plea.  We talked -- I talked to my
15 attorney about it.  Now, he was saying it's a good deal.
16 I was saying it's a good deal.

17    THE COURT:  And, Mr. Walsh, let me interrupt you just
18 for one second.  And I've reminded you of this many times, and
19 so I know you know this; but just for the sake of being
20 complete, I'd like to remind you of it again.

21    One, you know, your attorney should be making the
22 arguments for you, not you.

23    Two, you're the most important person at this
24 hearing, so if you want to talk, I'm going to let you talk.
25    Three, I'd encourage you not to talk about what

1   you're talking about and not to go where I think you're going

2   because it's very possible that what you're saying could hurt

3   you rather than help you.

4           THE DEFENDANT:  Okay.

5           THE COURT:  So, it's up to you.

6           THE DEFENDANT:  Okay.  I mean, I said what I had to

7   say about that.  In the sentence disparity, there's a couple

8   of cases.  Okay?  If you're listening, all right, *United*

9   *States versus Edward Klich*, Case No. 14 CR 513.  You sentenced

10  him on November 5th, 2015, at 10:30 a.m., nine counts of bank

11  robbery.  One of them counts was with a gun.  He was in his

12  50s or something like that.  You sentenced him total to

13  72 months.  This is -- I've got a copy of the sentencing

14  transcript, so I know he had -- one of them counts was with a

15  gun.  He got 72 months.

16          Mr. Cayatano, C-A-Y-A-T-A-N-O.  You sentenced him in

17  2019 to 105 months.  He was on probation for a bank robbery.

18  Now, this was a note job.  Most of these other counts on

19  Edward Klich was with a note, but one of those counts was with

20  a gun on Edward Klich.

21          Mr. Cayatano was on probation at the time, living

22  in a halfway house over here on -- near Kedzie and Chicago

23  Avenue.  While he's in the halfway house, he's getting high,

24  and he robbed a bank or two.  At sentencing, you said that --

25  he's in his 50s or 60s.  You said that if you were to give him

1    as much time as he should really be given, that he would die
2    in prison.  You sentenced him to 105 months.  Okay?

3          All I'm saying is you wanted to hit me over the head
4    with 156 months; and I had these other cases, and I was
5    looking at them.  It was just -- it upset the apple cart quite
6    a bit, and I'm thinking, "Why are you going to hit me over the
7    head with 156 months?"  I'm 73.  I'm going to be 74
8    December 18th.  I'm going to be 74 years old.

9          I already told you the real truth about vocational
10   training and the rest of it.  I wasn't lying about that.  If
11   you could review that and go under a voice stress test, you'll
12   see that I was telling the truth.  I'm not trying to die in
13   prison.  I'm not trying to do something that's been --
14   that's -- I never had no intentions on hurting anybody.

15         If you look at clip 1 in that bank robbery and see
16   how fast I did what I did, look at clip 5.  The attendant lady
17   that was there, okay, she was on the phone at the time.  She
18   pushed me on to the other teller when I came in.  They knew
19   what time it was.  She stayed on that phone.

20         Now, to see the robbery from clip 5, from their point
21   of view, not from the other side, but you see it from their
22   side, okay; and from their side, when I came up, I told her
23   what I said, you know, blah, blah, blah.  Okay.  She closed
24   the drawer.  I did the fast thing with the gun, just to get
25   her to comply.  She immediately, "Okay," and they gave me the

1  money.

2  One of them tellers says that that wasn't a real gun.
3  It looked like it was phony, and it was phony.  I could
4  explain why, and I could explain a lot of things.  I don't
5  want to do that.  If I have to do it, I have to do it in front
6  of a jury because somebody could take it either way; and if
7  they saw that the gun was loaded at that time, that they could
8  do what they wanted to do.

9  Unfortunately, it was not like that.  You know, it --
10  you know I can almost prove that in front of a jury.  That's
11  why I told you that in 2019, and I didn't really want to plead
12  guilty to that when it came on the thing on the guilty plea in
13  February.

14  Why do you think I was hesitant to even do that?
15  Why, in actuality, if you're arrested at the car, factual
16  stuff, now we're talking about real facts here, and you're
17  arrested in a car, by the statute, you can't go anywhere if
18  you're arrested at the car.  True, they arrested me.  True
19  that I was set up, all that.  But they could have arrested me
20  almost any time.  They chose to wait until then to make things
21  more than what it should have been.

22  I'm glad that -- it might have been a whole different
23  other outcome and a bad outcome.  That's -- I'm being
24  perfectly honest about that.  But as was, they did what they
25  did.  They did their job.  Okay.  I understand that.

1       But what I'm saying is that all I needed was

2   vocational training.  That's all.  That's it.  You know?  I'm

3   not -- you know, that's what made me just go completely right

4   off the chain because politically -- to me, it seems like it's

5   political.  Okay?  You got up with the DA or the DA got up

6   with you, and you decided to make a big thing because of my

7   past history, which really shouldn't be considered.  It can be

8   considered, but it shouldn't be used against me in any

9   sentencing because it's too old.  Okay?

10      You've got people that put those headlines together

11  that are way above the average pay grade of everybody else

12  sitting there.  They did that for a reason.

13      Now, true, you don't have to go along with the

14  Guideline range.  You don't have to do anything.  You could

15  sentence me to whatever you want to sentence me to.  I'm just

16  saying that if you're going to give me a -- give me a fair

17  shake.  That's all.  I'm just trying to do the best I can

18  with what I have, man.  You know, to me, hey, it just made

19  me go off.

20      It is what it is, and trust me, if I had the

21  vocational training and could get some vocational training,

22  this here would have never happened.  If I had had that, I

23  would have never been in your presence.  I would have never

24  been in court.

25      I was trying out there, and I wasn't sure about what

1    I was saying.  To me it looked like you just overlooked all of

2    this, and said, "Hey, here's this record, here, here, and

3    here."  And I understand that.  I don't like that.  I

4    understand that.  I can see where you can do this and be

5    justified in doing what you're doing.

6           What I'm saying is that, "Hey" -- I'm saying, "Hey,

7    I'd like to get out of the shoe."  They've got me in the shoe.

8    Somebody over there called over and had me put in the shoe

9    that day.  I'm being punished in prison as-is over what I

10    probably said to you.

11           And I haven't used any vulgarity.  I'm not using any

12    profanity.  All I'm doing is just stating simple facts.

13    That's it.

14           That's all I'd like to say.  Do what you feel best.

15           THE COURT:  Okay.  Thank you, Mr. Walsh.

16           We do have this matter, though, of the motion to

17    withdraw the guilty plea.

18           THE DEFENDANT:  Yeah.

19           THE COURT:  So, Mr. Boyle --

20           MR. BOYLE:  Yes, Judge.  Can you hear me?

21           THE COURT:  I can.

22           MR. BOYLE:  Okay.  I -- forgive me.  I seem to be

23    having -- for some reason, this case, I have issues with the

24    technology.  I don't know if you guys hear a lot of

25    distortion.  I'm getting a good deal of distortion.

1    THE COURT:  There was just a little bit from
2  Mr. Walsh, but I was able to understand everything that he
3  said.

4    MR. BOYLE:  Okay.  Well, if something strange
5  happens, Judge, I apologize.  I don't want this to be
6  continued because of my technology issues.  I will call in.
7  Okay?

8    But, I mean, the issue we have with the motion to
9  withdraw the guilty plea is it's somewhat similar to some of
10  the other motions throughout the history of the case.
11  Mr. Walsh has his arguments, his understandings, which he has
12  articulated again at the previous sentencing hearing, his
13  belief that the attempted robbery should not be used against
14  him in any way.  And he articulated that again today.

15    It's just the issue is, as your Honor has pointed
16  out, there was a written plea agreement in this case, which
17  anticipated and stated the fact that the parties were
18  essentially agreeing to disagree about that factor.

19    He's also raised the fact that he should be getting
20  the three points off for acceptance of responsibility.  So, I
21  mean, he seems to be arguing that he didn't have a good
22  understanding of the plea agreement.

23    THE COURT:  Right.  And then the -- given that
24  that's -- given that that seems to be a motion that he is
25  making, the defendant is making, where do we take it from

1　here?  If you wanted to submit something in writing, I'd

2　give you a chance to do that --

3　　　　　　MR. BOYLE:  I'm happy to --

4　　　　　　THE COURT:  Okay.  Mr. Boyle, you just dropped off.

5　　　　　　You're back.

6　　　　　　THE DEFENDANT:  You're back.

7　　　　　　MR. BOYLE:  Okay.

8　　　　　　THE DEFENDANT:  Can you hear what's going on?  I'll

9　be dammed.

10　　　　　　MR. BOYLE:  That's the problem.  It keeps dropping.

11　I'm happy to waive video presence if I can just call in and we

12　can all be heard and I can hear everyone.

13　　　　　　THE COURT:  That's fine.  Why don't you go ahead.

14　　　　　　MR. BOYLE:  Can we do that?  All right.  Thank you,

15　Judge.

16　　　　　　THE DEFENDANT:  Can you hear, Mr. Boyle?  Mr. Boyle?

17　I'll be dammed.

18　　　　　　MR. BOYLE:  I'm going to be calling in.

19　　　　　　THE DEFENDANT:  Can you hear?

20　　　　　　THE COURT:  He'll let us know when he's back on.

21　　　　　　THE DEFENDANT:  And I would appreciate getting out of

22　the shoe, if possible.  I haven't made it in the shoe.

23　　　　　　MR. BOYLE:  This seems to be working, Judge.  We can

24　go forward, if you can hear me.

25　　　　　　THE COURT:  Okay.  Right.  I can hear you.

1          MR. BOYLE:  Okay.  Good.

2          THE COURT:  So, the question is, would you like to --

3    would you like to file a written motion in -- a written

4    submission in support of the motion to withdraw the guilty

5    plea under Section 11(d)(2)(B)?

6          MR. BOYLE:  Yes, your Honor.  That is still your

7    desire, Mr. Walsh, correct?

8          THE DEFENDANT:  It's my desire, yes, sir.

9          MR. BOYLE:  Yes, I would like that opportunity,

10   Judge.

11         THE COURT:  All right.  And because it's -- because

12   the withdrawing of the guilty plea issue is logically

13   anterior, obviously, to the sentencing, I think we ought to

14   handle that first.

15         But just let me -- before we go down that road, let

16   me make sure that the government is on board.  If the

17   government has a different view, please, I'd be happy to hear

18   your perspective.

19         MR. VEATCH:  Certainly, your Honor.  I do think

20   that's the appropriate path forward.  We do just have the one

21   concern.  And again, we don't take a position on the motion

22   for recusal; but this is a -- it would arguably be a

23   substantive decision the Court will be making, and we do

24   wonder whether that motion should be addressed just for

25   purposes of the record.

1      THE COURT:  I understand.  That's a good point.

2      Let's do this.  Why don't I just have -- let's get

3  the briefing in on the motion to withdraw; and then when we

4  get back together the next time, I'll have had a chance to

5  think about the order in which I ought to consider the

6  defendant's various motions.

7      So, Mr. Boyle, how long would you like to file your

8  motion?

9      MR. BOYLE:  Seven days, your Honor.

10     THE COURT:  Sure.  I think that's --

11     MR. BOYLE:  I mean, I don't believe we would need an

12  affidavit from Mr. Walsh.  I think he has stated on several

13  occasions his belief and basis for the withdrawal.  Is that

14  fair?

15     THE COURT:  I mean, I know he has stated it.  I'm not

16  sure he's stated it under oath or in a declaration.

17     MR. BOYLE:  If we want an affidavit, then I would

18  just probably need additional time to get it to him and get

19  it signed and get it back to me somehow.

20     THE COURT:  Okay.  So, why don't we say November 23rd

21  will be the motion.

22     And then government, how long would you like to

23  respond?

24     MR. VEATCH:  A week would be sufficient, your Honor.

25  We'll put in a request for the hearing transcript after this

1  hearing.

2         THE COURT:  Sure.  I mean, a week is November 30th,

3  but there's Thanksgiving in between the 23rd and the 30th.

4         MR. VEATCH:  If we could have two, then, your Honor,

5  we certainly would appreciate it.

6         THE COURT:  All right.  Then let's say -- why don't

7  we say December 4th, which is the end of the week after

8  Thanksgiving.  And then why don't we set this again for a

9  hearing on the motion to withdraw the guilty plea, the recusal

10  motion, and the continued sentencing, some of which may not

11  occur depending on what happens with the two motions, the

12  motion to withdraw the guilty plea and the motion to recuse.

13         Go ahead.

14         MR. VEATCH:  Your Honor, I just wanted to flag -- and

15  Mr. Boyle is aware of this.  The government was planning to

16  introduce at some point during one of these hearings a

17  sentencing exhibit, which would be an audio recording of a

18  telephone call Mr. Walsh placed following the October 6th

19  hearing, in which he describes to an associate his conduct in

20  court going back through the threats that he had made, making

21  clear that they were threats against the prosecutor, Probation

22  Office, and your Honor.

23         And so we were planning to do that as part of a

24  sentencing argument.  So, I just want to make the Court aware

25  of it.  Mr. Boyle has the recordings.  We wonder if in the

1  interests of time it would be easier just to submit this as a

2  supplement to our government's version and submit it through

3  Probation to the Court and the parties so that everyone has

4  it in advance.

5        THE COURT:  That would be a good idea.  And again,

6  I may not be getting to the sentencing.

7        MR. VEATCH:  Certainly.

8        THE COURT:  But in case I do, I think it's smart to

9  make sure that that's on file.

10        MR. VEATCH:  Okay.  Thank you, your Honor.

11        THE COURT:  Sure.  Jackie, can we give them another

12  date?

13        THE CLERK:  When do you want to have a date?

14        THE COURT:  I'd say either the -- later in the week

15  of the 7th or during the week of the 14th.

16        THE CLERK:  Let me just check out one thing.

17        MR. CHRISTIANSEN:  Your Honor, this is Probation

18  Officer Christiansen.  Is there anything that you require

19  from our office at this time?

20        THE COURT:  I don't think so.

21        MR. CHRISTIANSEN:  Thank you, sir.

22        THE DEFENDANT:  Mr. Boyle --

23        THE CLERK:  How about --

24        THE DEFENDANT:  -- can you hear me?

25        MR. BOYLE:  Mr. Walsh, I'm going to request a legal

1    call with you soon.

2            I apologize, Jackie.

3            We're in court, essentially, Mr. Walsh.  I will talk

4    to you on a private legal call very soon.

5            THE CLERK:  Okay.  How about December 10th at

6    10:30 a.m.

7            THE DEFENDANT:  Can I get released from the shoe,

8    please?

9            THE COURT:  That's not up to me.  That's up to the

10   MCC.

11           THE DEFENDANT:  Why was I put in the shoe?  Either

12   the state attorney or something -- or the DA.

13           THE COURT:  Okay.  You're asking the wrong person.

14   I did not direct that you be put in the shoe.

15           Okay.  Anything further?

16           MR. BOYLE:  I just have a 10:15 status with Judge

17   Rowland that morning.  Is 11:00 possible?  Or 10:30 would

18   probably work, but if I'm a few minutes late, that's the

19   reason.

20           THE COURT:  So, why don't we say 10:45.

21           MR. BOYLE:  Thank you, Judge.

22           THE DEFENDANT:  What day is this?  What day is that?

23           MR. BOYLE:  December 10th.

24           THE DEFENDANT:  Huh?

25           MR. BOYLE:  December 10th.

1    THE DEFENDANT:  December 10th?

2          MR. BOYLE:  Yes.

3          THE DEFENDANT:  Okay.  See if you can call over here

4    and see what's up with the shoe placement.  All right?  You

5    were going to do that the other day?

6          MR. BOYLE:  Yes, sir.

7          THE DEFENDANT:  Okay.  I'm trying to talk to

8    Mr. Boyle, if I could.

9          THE COURT:  Okay.  Then we should probably -- I'm

10   going to drop off, unless there's anything else from the

11   government, Probation, or Mr. Boyle?

12         MR. BOYLE:  No.  Thank you, your Honor.

13         MR. VEATCH:  Not from the government, your Honor.

14         THE COURT:  All right.  Thank you.

15     (Which were all the proceedings heard.)

16                       CERTIFICATE

17    I certify that the foregoing is a correct transcript from

18   the record of proceedings in the above-entitled matter.

19

20   */s/Charles R. Zandi*                *November 23, 2020*

21   Charles R. Zandi              Date
     Official Court Reporter

22

23

24

25